AMERICAN TELEPHONE & TELEGRAPH CO. v. SECRETARY OF STATE.

FOREIGN CORPORATIONS—TELEGRAPH AND TELEPHONE—AUTHORITY TO TRANSACT BUSINESS—MANDAMUS.

   Under statutes of Michigan separating the functions of telegraph and telephone companies and restricting the right of one company to engage in the two kinds of business, mandamus will not issue in favor of a foreign corporation to compel the secretary of State to issue a certificate of authority to transact both kinds of business in Michigan, although the corporation is authorized so to do in the State where it is organized.

Mandamus by the American Telephone & Telegraph Company to compel Frederick C. Martindale, secretary of State, to issue a certificate of authority.   Submitted November 18, 1909.   (Calendar No. 23,663.)   Writ denied December 10, 1909.

*Angell, Boynton, McMillan & Bodman*, for relator.

*John E. Bird*, Attorney General (*Arthur P. Hicks*, of counsel), for respondent.

BROOKE, J. The relator is a corporation, organized in 1885, under an act of the legislature of the State of New York, entitled: "An act to provide for the incorporation and regulation of telegraph companies." By judicial construction of the courts of the State of New York, it has been determined that companies organized under this act, including relator, may lawfully conduct a telephone business as well as a telegraph business. *Hudson River Telephone Co.* v. *Railroad Co.*, 56 Hun, 67 (9 N. Y. Supp. 177); 61 Hun, 140 (15 N. Y. Supp. 752); 135 N. Y. 393 (32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838); *Eels* v. *Telegraph Co.*, 143 N. Y. 133 (38 N. E. 202, 25 L. R. A. 640); *City of Rochester* v. *Telephone Co.*, 52 App. Div. (N. Y.) 6 (64 N. Y. Supp. 804); *Village of Carthage* v. *Telegraph Co.*, 185 N. Y. 448 (78 N. E. 165, 113 Am. St. Rep. 932). In October, 1908, relator applied to the secretary of State for a certificate of authority to do both a telephone and telegraph business in the State of Michigan. Respondent refused to issue the certificate, whereupon relator applied to this court for a writ of mandamus to compel its issuance.

The statute under which authority is granted foreign corporations to do business in Michigan is Act No. 310, Pub. Acts 1907. The proviso contained in section 4 thereof is as follows:

"*Provided*, That no such foreign corporation shall be permitted to transact business in this State, unless it be incorporated, in whole or in part, for the purpose or object for which a corporation may be formed under the laws of Michigan, and then only for such purpose or object. And the secretary of State shall, in the certificate which he issues, state under what act such corporation is to carry on business in this State, and such corporation shall have all the powers, rights, and privileges, and be subject to all the restrictions, requirements, and duties,

granted to, or imposed upon, corporations organized under such act."

Sections 6667 to 6687, 2 Comp. Laws, provide for the incorporation and regulation of telegraph companies. The original act was passed by the legislature in 1847 (Act No. 4, Laws 1847). It was enlarged and re-enacted in 1851 (Act No. 59, Laws 1851), and various additions were made thereto down to the year 1873 (Act No. 14, Laws 1873). In the year 1883 the legislature passed an act authorizing the formation of telephone companies (Act No. 129, Pub. Acts 1883). For more than a quarter of a century the legislature has seen fit to keep separate these two lines of activity. This course has been followed, too, during a period in which the telephone business of the State has grown from an insignificant enterprise to one of great magnitude. At its inception messages could not readily be transmitted long distances, and many communities were without service. Today the telephone line extends to nearly every village in the State, and a very large and constantly increasing number of rural inhabitants enjoy its use. Wherever the telegraph line is, there, too, is the telephone. In the hands of independent agencies, it may well be that a healthy competition for the transmission of information by electricity will ensue. We are of opinion that the legislative enactments touching the question indicate a policy on the part of the State to afford its people a choice of two agencies of independent ownership. It is quite clear that, in the light of the separate enactments and the policy indicated thereby, we could not hold a domestic corporation capable of transacting both kinds of business. We think it logically follows that no foreign corporation should be given a privilege denied to those of our own creation, particularly when to do so would be subversive of the policy of the State.

It is urged by relator that the construction by the home State of corporate powers is binding everywhere, citing, among others, the case of *Thompson v. Waters*, 25 Mich. 214 (12 Am. Rep. 243). An examination of that case

shows that, while the court did in fact hold a foreign corporation legally entitled to exercise in Michigan certain functions possessed by it under its home charter, that conclusion was reached only upon the ground that the legislature had never prohibited the exercise of such functions by a foreign corporation within the State. Indeed, legislation was found which seemed to the court to indicate an intent favorable to their exercise. In discussing the question of comity there involved, Chief Justice CHRISTIANCY said:

" The rule seems to be generally and well settled that the corporate existence, rights of making and enforcing contracts, of acquiring property, and of transacting business (not requiring the exercise of official corporate action or franchises within the State) of a corporation created by the laws of one State will be recognized and protected in another, subject only to the qualification that the enjoyment and exercise of such rights shall not be contrary to the laws or settled policy of the State in which they are sought to be enjoyed or exercised, or prejudicial to the interests of such State or its citizens.    *    *    *

" A corporation, however, in any aspect in which it is here essential to consider it, is but an artificial person, whose strictly legal existence, by force of obligatory law, is confined to the State which has created it and endowed it with its powers, capacities, and rights, and it can only exercise those powers, capacities, and rights in another State by the permission, express or implied, of the sovereign or legislative power of the latter, which must be its own judge how far and upon what conditions it is consistent with its own domestic policy and the interests of its citizens to accord such recognition.    *    *    *

" As it is not, then, the comity of the courts, but that of the State, and the question is upon the adoption, or qualified adoption, in this State of the laws, or rather certain incidents growing out of the laws, of Indiana, it follows that the power of determining the question whether, and how far, or with what modification, or upon what conditions, the laws of that State, or any rights dependent upon them, shall be recognized here, belongs to the legislative or lawmaking power of the State, and that the judiciary, whose province is only to declare and not to make the law, must be guided in their decision by the principle

and policy adopted by the legislature of this State in reference to this question."

Applying the foregoing reasoning to the facts in the case at bar, we find there is no room for doubt as to the legislative intent or the policy of the State. For reasons good or bad, but satisfactory to itself, and presumably in the interests of its citizens, the State has chosen, with great deliberation and certainty, to maintain as separate and distinct agencies telephone and telegraph companies. To overturn this settled policy on the part of the State would, it seems to us, be as unwise as unwarranted.

Counsel for relator urge that, inasmuch as relator has power in New York to do two things, it at all events has the right to choose which of those two things it will do in Michigan; both being lawful. A sufficient answer to this proposition is that no such case is presented by the application. Relator applied for a certificate to do both, and seeks a mandamus to compel the issuance of such certificate.

The writ is denied.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.