## AMERICAN AUTOMOBILE INSURANCE CO. *v.* COMMISSIONER OF INSURANCE.

1. INSURANCE — FIRE AND INDEMNITY POLICIES — AUTOMOBILE INSURANCE—MANDAMUS.

   In a mandamus proceeding to compel the commissioner of insurance to rescind a ruling, requiring relator to cease transacting personal liability insurance in Michigan, a foreign corporation, issuing insurance on automobiles in connection with personal liability insurance and indemnity against accident, and including in its policy an agreement to defend suits, pay costs, etc., having exceeded the authority conferred by Act No. 15, Pub. Acts 1911, amending Act No. 77, Pub. Acts 1869, is not entitled to the writ (3 How. Stat. [2d Ed.] § 8049 *et seq.*).

2. SAME—FOREIGN CORPORATIONS—CONFLICT OF LAWS.

   Since the policy of this State, as evidenced by statutes and decisions, is to separate insurance on property from other lines, the rule of comity, permitting a corporation organized under laws of another State that authorize it to transact liablity and other insurance on automobiles, to engage in similar business in sister states, does not empower it to engage in such distinct lines of business not permitted by the statutes of this State.

Mandamus by the American Automobile Insurance Company, of St. Louis, Missouri, against C. A. Palmer,

insurance commissioner of the State of Michigan, to compel respondent to rescind an official ruling that relator should suspend personal liability insurance on automobiles. Submitted January 14, 1913. (Calendar No. 25449.) Writ denied March 20, 1913.

*Robson & Murfin,* for relator.

*Grant Fellows,* Attorney General, and *L. W. Carr* and *Thomas A. Lawler,* Assistant Attorneys General, for respondent.

MOORE, J. The questions involved cannot, perhaps, be better understood than by quoting from the briefs of counsel. The following is from relator's brief:

"Relator is incorporated under the laws of the State of Missouri, where, by its charter and certificate of authority, it is authorized to write 'all kinds of insurance on automobiles, to wit, fire, theft, collision, property damage and liability.' Through application properly made in different States, it is doing an automobile insurance business in approximately 20 States of the Union. On the 5th of March, 1912, after complying with the Michigan statutes and departmental regulations, the commissioner of insurance for this State authorized relator to transact business in this State under Act No. 136 of the Public Acts of 1869, as amended by Act No. 15 of the Public Acts of 1911. Whereupon, and until October 22, 1912, relator wrote automobile insurance in Michigan as it was doing in many other States, covering by its policy losses through fire, theft, collision, property damage and liability. On October 22d the commissioner of insurance for Michigan directed that relator should discontinue writing personal liability business on automobiles. The commissioner on application has refused to change his ruling or reverse his order, holding that Act No. 15 of the Public Acts of 1911 does not permit writing the form of policy relator had been writing.

"The title in section 1 of what is generally known as the 'Fire Insurance Act' was amended by Act No. 15 of the Public Acts of 1911, so that the title now reads, 'An act relative to the organization and powers of fire, marine

and automobile insurance companies transacting business within this State.' The sole change in the title being the addition of the word 'automobile.' Section 1 was amended by adding a third subdivision. That section permits the incorporation of companies for any and all of the purposes therein enumerated, the first subdivision relative to fire insurance companies, the second subdivision relative to marine insurance companies, and the third subdivision (the new one giving rise to this controversy) reading: 'To make insurance on automobiles, whether stationary or being operated under their own power against any hazard.' The primary question presented for determination is whether or not in that act the words 'any hazard' mean 'any hazard,' or 'any hazard except personal liability.'

"The second question, regardless of the answer to the foregoing inquiry, is as to whether or not, if relator is entitled to do business at all in this State, it should not, as a matter of comity under a settled rule of law, be entitled to do the same business here that it is authorized to do by its charter and the laws of its home State, where there is no express legislative prohibition to the contrary here. While the problem is apparently a simple one, yet the ruling of the commissioner seems to make it necessary to consider briefly the history of our insurance laws."

Then follows a history of the insurance laws.

Proceeding, counsel say:

"Confessedly, automobile insurance is in a class by itself. The largest risk possible to take in the automobile insurance line by any company is a fire risk incident to the burning of a garage harboring a number of machines at the same time, which is undoubtedly the reason for putting automobile insurance under the 'Fire Act.'

"We have therefore the following significant circumstances to be borne in mind:

"(1) The sudden necessity of an automobile insurance policy which would cover 'any hazard.'

"(2) We have the reason for providing under the 'Fire Act' for the incorporation of automobile insurance companies.

"(3) We have the restrictive language in the 'Life Act,' which specifically enumerates what may be insured and prohibits any other kind of insurance.

"(4) We have like language in the act to provide for

the admission into this State of a limited class of automobile insurance companies.

"(5) We have the act designed by the legislature to meet the suddenly developed demand which, in the desire of the legislature to meet, was intentionally and deliberately made as broad as possible by amending the title, so that in its title the act provided for the organization of automobile insurance companies, and in the body of the act such companies were authorized 'to make insurance upon automobiles (*a*) whether stationary, or (*b*) being operated under their own power against any hazard.'

"If the legislature intended to say 'against any hazard except liability,' why did they not say so? The word 'any' certainly cannot be construed in this connection to mean only a portion of hazards, nor can it be construed to mean 'any one hazard.' The department has construed it to mean 'only certain hazards.' We respectfully submit it must mean either 'any one hazard' or 'every hazard,' and the context and the reasoning prompt the belief that 'every hazard' is intended; otherwise the legislation was idle."

The query might be germane here: If the legislature meant to authorize liability insurance, so called, why did it not say so? Before raising that inquiry, we quote from the brief of the attorney general:

"The relator is an insurance company organized under the laws of the State of Missouri. It has complied with the provisions of Act 136, Public Acts of 1869, as amended, being sections 7224, etc., Compiled Laws of 1897, and being the act with reference to fire and marine insurance companies. It has not complied with the provisions of Act 77, Public Acts 1869, being sections 7190, etc., Compiled Laws 1897, and being the act which with its various amendments controls the organization of life, casualty, and surety insurance companies. At the time of the service of the commissioner's order, it was writing 'personal liability business on automobiles.' In other words, it was writing the kind of policies which insured the owners of automobiles from personal liability for damages done by them to pedestrians and others in their use of the machines. The statutory policy of the State and the departmental policy of the insurance department has always been to keep the two lines of insurance separate

and distinct, those companies which wrote insurance upon property being organized under one act (the act under which relator was authorized to do business), and those companies which wrote insurance with reference to liability to persons being organized under another act (the one with which relator has not complied). The fire and the marine act being designed to permit those companies which write insurance upon property to organize and do business under one class of provisions and restrictions, while those companies which write insurance upon the lives of persons, damage to persons, and in cases where the element of accident and chance more largely prevail, being authorized to organize under the so-called life act.

"The writing of fire and marine insurance is as old as the country itself, and it has been so long in existence that it is possible to figure with a reasonable degree of certainty the percentage of loss, and therefore what restrictions are advisable, in order to provide such safeguards as may be needed to throw around this class of business. The writing of so-called liability insurance is, however, of recent date. Prior to 1909 there was no statute in the State which permitted companies to write this character of insurance business. At this time the life act was amended by Act 297. However, the legislature in its widsom has all along seemed to feel that greater safeguards should be thrown around those companies which write life, sick, accident, and casualty insurance than is thrown around the company which writes insurance upon property and upon property alone. If this policy of the law in this State has been changed at all since 1869, it must be by the act under consideration, viz., Act No. 15, Public Acts 1911, p. 18.[1]

"The legislature of 1911 by this act amended the fire and marine act in only one particular, viz., by adding in section 1 the following:

"'Third. To make insurance upon automobiles, whether stationary or being operated under their own power against any hazard.'

"The same legislature at the same session also made provision for the writing of automobile insurance in the State by companies organized under the laws of other States by passing Act 111, Public Acts 1911, p. 167, which act specifically limited the liability to be covered by the

---

[1] 3 How. Stat. (2d. Ed.) § 8049 *et seq.*

policy of insurance to be issued by such foreign companies
in Michigan to property loss and maintained the fixed pol-
icy of the State to segregate property insurance from lia-
bility insurance.    We quote as much of it as may be im-
portant here:

  " ' It shall be lawful for such insurance companies organized under
the laws of any other State and authorized by law to transact the
business of insuring motor cars and other vehicles against loss or
damage by fire, loss or damage while being transported in any con-
veyance by land or water, loss or damage by theft, robbery or pil-
ferage, loss or damage sustained by collision with any object mov-
ing or stationary, and loss or damage done to property by such mo-
tor cars and other vehicles through the operation thereof, to do the
business of insuring automobiles and other vehicles against the
hazards herein enumerated, only in this State with the consent of
the commissioner of insurance of this State upon filing the state-
ments making the applications and complying in all respects, as far
as applicable with the provisions of an act entitled " An act relative
to the organization and powers of fire and marine insurance com-
panies transacting business in this State, being sections," ' etc.

  " We respectfully submit that this act specifically limit-
ing the kinds of insurance that may be written by foreign
automobile insurance companies controls, and is exclusive.
The respondent, commissioner of insurance, has construed
these amendments to mean that an insurance company
organized under the laws of this State, or of foreign com-
pany organized under the laws of another State, may
write property insurance upon automobiles, but may not
write personal liability insurance where the damage insur-
ed against is done and the liability created in the negli-
gent use of the machines.    *    *    *    If the relator desired
to write casualty insurance alone, it would be necessary
for it to comply with Act 77, Public Acts of 1869, as
amended, and, if it did comply with the provisions of this
act, it cannot write fire and marine insurance.    Act 297,
Public Acts 1909, p. 697, in section 1 thereof, after enu-
merating the various kinds of insurance which may be
written by a company organized under its provisions,
provides that:

  " ' Each company organized under this act shall have authority to
reinsure any risk authorized to be undertaken by them, and to grant
reinsurance upon any similar risk undertaken by any other company,
but shall not have power to undertake marine and fire risks, or

any other species of insurance whatever than that specified in some one or more of the foregoing subdivisions.'

"The distinction between insurance upon property where the recovery is limited to the value of the property destroyed and liability insurance where the value of the property is of minor importance is apparent. Therefore the legislature in its wisdom has provided that an insurance company writing fire and marine insurance (viz., insurance upon property) need not make a deposit with the State treasurer to secure its policy holders, but may retain its securities in its own hands; while a liability insurance company is required to deposit in specified securities the sum of $100,000 with the State treasurer to secure its policy holders. It may be that this action is because of the fact adverted to heretofore, that fire and marine insurance is old, well established, and the probable amount of loss in any one year readily ascertainable, while with a liability company the amount to be paid under any policy may be $100 if the injury done is small, or it may be $5,000 if the injury done is great. A property insurance policy upon an automobile is limited to the value of the machine, and the damage done by the machine; while in the case of liability insurance it may be tenfold the value of the machine."

We think we have quoted sufficiently so that we may very properly approach the first question; that is, whether the amendment authorizes liability insurance, so called. The language of the statute is not complex. Authority is given to "make insurance on automobiles." If it was an insurance on the automobile against fire, that would be a recognized hazard to which automobiles are subject. If it was an insurance on the automobile against theft, that, too, would be a recognized hazard to which the automobile is subject. So of injury by accident, and the liability in each case would not be greater than the value of the automobile. Is not the relator doing more than placing insurance on automobiles? Section 1 of the policy clearly places insurance upon automobiles. Section 2 reads in part as follows:

"Against loss or expense arising or resulting from claims upon the assured for damages by reason of the

ownership, maintenance, manipulation or use of any automobile enumerated and described in statement IV of the schedule of statements, on account of :

"Injury to Persons. (A) Bodily injuries or death accidentally suffered or. alleged to have been suffered by any person or persons as the result of an accident occurring while this policy is in force;

"Damage to Property. (B) Damage to or destruction of property of every description (except property in charge of the assured, or any of the insured's employés, or carried in or upon any automobile covered by this policy) arising from an accident occurring while this policy is in force; and, in addition to the above, the company does hereby agree :

"Defense of Suits. (C) To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages suffered or alleged to have been suffered on account of the bodily injuries or death or the damage to or the destruction of property as set forth in this section; and,

"Payment of Costs. (D) To pay all costs taxed against the assured in any legal proceeding against the assured, defended by the company in accordance with the foregoing agreement; and to pay interest accruing after entry of judgment on that part of such judgment act in excess of the limit of liability of the company under this section; and,

"Medical Aid. (E) That such immediate surgical relief as shall be imperative at the time of an accident involving bodily injuries, may be provided by the assured at the expense of the company."

We think it a strained construction of language to say that a contract of this sort is simply the placing of insurance on an automobile. The liability thus created is not limited by the value of the automobile. Instead of being property insurance, it makes a contract of an entirely different character from that authorized by the amendment.

We may now consider the second question, *i. e.:* May the relator continue to issue so-called liability insurance as a matter of comity? The position of counsel is stated by them as follows:

"There is an added reason peculiar to this relator which entitles relator to the relief prayed. The order complained

of, and here sought to be set aside, is that we discontinue writing liability insurance on automobiles.  It is undisputed that by the laws of our domicile and by the express terms of our charter in Missouri we are entitled to write the form of policy we had been writing which includes liability.   Under these circumstances, we are entitled to do the same in Michigan.   The law is settled:

" 'The corporations of one State may exercise any or all of their powers in another State unless the latter State by its statutes, decisions or policies forbids' [citing many cases].

"As one of the foregoing cases expresses the rule:

" ' Where there is no positive prohibitive statute, the presumption under the law of comity that prevails between the States of the Union is that the State permits a corporation organized in a sister State to do any act authorized by its charter or the law under which it is enacted, except when it is manifest that such act is obnoxious to the policy of the law in this State.'

" It becomes therefore, necessary, in demonstrating the applicability of the foregoing proposition in the case at bar to ascertain if there is any prohibitive statute or public policy forbidding relator to write liability insurance.  The statutes relative to the admission of nonresident insurance companies into Michigan are confessedly loosely drawn, and not altogether satisfactory.   An examination of all the sections in any way applying to the present situation fails to disclose any express statute prohibiting doing that which we ask.   On the other hand, the general statute relative to the right of foreign corporations to do business in this State in express terms provides:

" 'That no such foreign corporation shall be permitted to transact business in this State unless it be incorporated in whole or in part for the purpose or object for which a corporation may be formed under the laws of Michigan, and then only for such purpose or object.'   *Public Acts* 1907, No. 310.

" By its express terms, this act does not apply to insurance companies.   It is manifest, therefore, that th legislature has expressly removed, so far at least, that restriction from applying to insurance companies.   In other words, instead of there being legislative prohibition against our writing liability, such prohibition, in the light of the rule as announced, has been expressly removed from insurance companies."

The attorney general does not concede that in its home State the relator is authorized to engage in the business of liability insurance, but contends that the policy of the State of Missouri is the same as the policy of this State, to segregate the different kinds of insurance, and to prohibit the transaction of more than one kind of insurance by the same company.   It is not, however, necessary to pass upon that question.

It is to be observed that in all the authorities upon this subject cited by counsel for relator, it is made clear that, if the proposed act is obnoxious to the policy of the law of the State, the rule of comity will not prevail.   We have quoted sufficiently from the briefs of counsel to indicate the questions involved.   Without further citation of the authorities, we shall content ourselves with saying that we are in accord with the argument of the attorney general, to the effect that it is the policy of the State to separate the business of insurance upon property from other lines of insurance, and that, before we should hold this policy has been changed by the legislature, it should speak in less uncertain terms than it has done in the amendment of 1911.   The case of *American Telephone & Telegraph Co.* v. *Secretary of State,* 159 Mich. 195 (123 N. W. 568), is in point.

The writ is denied.

STEERE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.   KUHN, J., did not sit.